UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LEANDRE MARTELL,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>JULIE WILLIAMS, et al.,<br><br>　　　　　　　　Defendants. | Case No. 2:22-cv-00858-RFB-BNW<br><br>**SCREENING ORDER** |

Plaintiff, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a civil-rights complaint under 42 U.S.C. § 1983 and filed an application to proceed in forma pauperis. (ECF Nos. 1-1, 1). The matter of the filing fee will be temporarily deferred. The Court now screens Plaintiff's civil-rights complaint under 28 U.S.C. § 1915A.

**I.    SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See id. §§ 1915A(b)(1), (2). Pro se pleadings, however, must be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged violation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, under the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. See Chappel v. Lab. Corp. of Am., 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it the plaintiff clearly cannot prove any set of facts in support of the claim that would entitle him or her to relief. Id. at 723–24. In making this determination, the Court takes as true all allegations of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. Warshaw v. Xoma Corp., 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a pro se complainant are held to less stringent standards than formal pleadings drafted by lawyers. Hughes v. Rowe, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. Id.

Additionally, a reviewing court should "begin by identifying [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." Id. "When

there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Finally, all or part of a complaint filed by an incarcerated person may be dismissed sua sponte if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable—like claims against defendants who are immune from suit or claims of infringement of a legal interest that clearly does not exist—as well as claims based on fanciful factual allegations like fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327–28 (1989).

## II.   SCREENING OF COMPLAINT

In his complaint, Plaintiff sues multiple Defendants for events that took place while Plaintiff was incarcerated at High Desert State Prison ("HDSP"). (ECF No. 1-1 at 1). Plaintiff sues Defendants Associate Warden Julie Williams and Caseworker Richard Houck. (Id. at 2). Plaintiff brings two claims and seeks monetary relief. (Id. at 5, 11).

In claim 1, Plaintiff alleges the following. On September 6, 2021, Plaintiff submitted a grievance challenging the length of his sentence with respect to work time and good time credits available under NRS § 209.4465. (Id. at 4). On October 12, 2021, Dressen rejected Plaintiff's grievance for failing to state a remedy. (Id.) However, Houck did not notify Plaintiff of the rejection until December 3, 2021. (Id.) Houck prevented Plaintiff from challenging the rejection because the improper grievance memo only gave Plaintiff five days to seek review, or his claim would be abandoned. (Id.) Houck did this because of "previous altercations" between Plaintiff and Houck. (Id.) That same day, Plaintiff fixed his errors and resubmitted the grievance to Houck. (Id.) However, Houck refused to resubmit the grievance for review and prevented Plaintiff from challenging the length of his sentence. (Id.) Houck commented that Plaintiff would not be going home if he had anything to do with it. (Id.) Houck handled all of Plaintiff's paperwork and parole board applications. (Id.)

In claim 2, Plaintiff alleges the following. On January 21, 2022, Houck returned Plaintiff's resubmitted grievance to Plaintiff and claimed that someone had denied the grievance for a second time. (Id. at 5). After inspecting the grievance, Sgt. Clayton concluded that Houck had never resubmitted the grievance because the alleged rejection did not come with a new or updated improper grievance memo that explained the second rejection. (Id.)

When Plaintiff confronted Houck about this, Houck told Plaintiff to give the grievance back and he would see what he could do. (Id.) Plaintiff feared that Houck would lose any important documents that Plaintiff gave him. (Id.) Sgt. Clayton tried to notify Associate Warden Williams, who was also the grievance coordinator, about Plaintiff's issues with Houck. (Id.) Williams, through Sgt. Clayton, told Plaintiff to submit another grievance about Houck's misconduct and to resubmit the original grievance. (Id.) When Sgt. Clayton told Williams that she should pick up the grievance, she responded that Houck could pick up the grievance and process it even though the grievance was against Houck. (Id. at 5-6). Instead, Sgt. Clayton put Plaintiff's grievance in the grievance box and noted that, if it did not reach the grievance coordinator, then Houck withheld it. (Id. at 6). After four months, Houck had not submitted or logged Plaintiff's grievance. (See id.) Plaintiff's grievance had attempted to challenge the length of his sentence and asked for someone to investigate Houck. (Id.) Plaintiff claims that he can no longer challenge the length of his sentence. (Id.)

In claims 1 and 2, Plaintiff alleges First Amendment retaliation and Eighth Amendment cruel and unusual punishment. (Id. at 4-5). The Court addresses each claim in turn.

### A.    Retaliation

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2004). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken

against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." Id.

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Id. at 567-68. Total chilling is not required; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Id. at 568-69.

The Court finds that Plaintiff states a colorable retaliation claim for claim 1. Based on the allegations in claim 1, after the warden rejected one of Plaintiff's grievances challenging work and good time credits, Houck actively prevented Plaintiff from challenging the rejections and commented that Plaintiff would not be going home if he had anything to do with it. Based on the allegations, after Plaintiff engaged in protected conduct by challenging his credit calculations, Houck engaged in adverse actions to prevent Plaintiff from being able to pursue that challenge. This is sufficient to state a colorable retaliation claim against Defendant Houck.

The Court finds that Plaintiff states a colorable retaliation claim in claim 2. Based on the allegations, Plaintiff complained about Houck's actions to Sgt. Clayton and Sgt. Clayton reported Houck to Williams. After Plaintiff made verbal and written complaints about Houck, Houck refused to process Plaintiff's grievances. This is sufficient to state a colorable retaliation claim against Defendant Houck. The Court will also let this retaliation claim proceed against Defendant Williams because she knew about Plaintiff's issues with Houck and did not do anything to correct the situation. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of

the violations and failed to act to prevent them. There is no respondeat superior liability under [§]1983").

### B.     Cruel and Unusual Punishment

Although it is unclear what Plaintiff's Eighth Amendment cruel and unusual punishment claim is based on, the Court interprets the allegations as claiming that Plaintiff is being held beyond the termination of his sentence because he could not challenge that issue during the grievance process. To state an Eighth Amendment cruel and unusual punishment claim for detaining a person beyond the termination of his or her sentence, the plaintiff must demonstrate that the detention was the result of deliberate indifference to the prisoner's liberty interest or that the detention violated due process. Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985).

The Court finds that Plaintiff fails to state a colorable claim. Plaintiff has not demonstrated deliberate indifference to his liberty interest or a violation of due process. Plaintiff claims the inability to challenge the length of his sentence but has not alleged that prison officials are detaining him beyond the termination of his sentence. The Court dismisses this claim without prejudice.

### III.    CONCLUSION

It is therefore ordered that a decision on the application to proceed in forma pauperis (ECF No. 1) is deferred.

It is further ordered that the Clerk of the Court file the complaint (ECF No. 1-1).

It is further ordered that the portion of claim 1, alleging First Amendment retaliation, will proceed against Defendant Houck.

It is further ordered that the portion of claim 2, alleging First Amendment retaliation, will proceed against Defendants Houck and Williams.

It is further ordered that the portions of claims 1 and 2, alleging Eighth Amendment cruel and unusual punishment, is dismissed without prejudice.

It is further ordered that given the nature of the claim(s) that the Court has permitted to proceed, this action is stayed for 90 days to allow Plaintiff and Defendant(s)

an opportunity to settle their dispute before the $350.00 filing fee is paid, an answer is filed, or the discovery process begins.  During this 90-day stay period and until the Court lifts the stay, no other pleadings or papers may be filed in this case, and the parties will not engage in any discovery, nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered by the Court to do so.  The Court will refer this case to the Court's Inmate Early Mediation Program, and the Court will enter a subsequent order.  Regardless, on or before 90 days from the date this order is entered, the Office of the Attorney General will file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end of the 90-day stay.  If the parties proceed with this action, the Court will then issue an order setting a date for Defendants to file an answer or other response.  Following the filing of an answer, the Court will issue a scheduling order setting discovery and dispositive motion deadlines.

"Settlement" may or may not include payment of money damages.  It also may or may not include an agreement to resolve Plaintiff's issues differently.  A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

It is further ordered that if the case does not settle, Plaintiff will be required to pay the full $350.00 statutory filing fee for a civil action. This fee cannot be waived, and the fee cannot be refunded once the Court enters an order granting Plaintiff's application to proceed in forma pauperis. If Plaintiff is allowed to proceed in forma pauperis, the fee will be paid in installments from his prison trust account. *See* 28 U.S.C. § 1915(b). If Plaintiff is not allowed to proceed in forma pauperis, the full $350 statutory filing fee for a civil action plus the $52 administrative filing fee, for a total of $402, will be due immediately.

It is further ordered that if any party seeks to have this case excluded from the inmate mediation program, that party will file a "motion to exclude case from mediation" no later than 21 days prior to the date set for mediation.  The responding party will have

7 days to file a response. No reply will be filed. Thereafter, the Court will issue an order, set the matter for hearing, or both.

It is further ordered that if Plaintiff needs an interpreter to participate in the mediation program, Plaintiff will file a notice identifying the interpretation language and the need for the interpreter within 30 days from the date of this order.

It is further ordered that the Clerk of Court is further directed to add the Nevada Department of Corrections to the docket as an Interested Party and electronically serve a copy of this order and a copy of Plaintiff's complaint (ECF No. 1) on the Office of the Attorney General of the State of Nevada by adding the Attorney General of the State of Nevada to the interested party on the docket. This does not indicate acceptance of service.

It is further ordered that the Attorney General's Office must advise the Court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of Interested Party for the purpose of participation in the Early Mediation Program. No defenses or objections, including lack of service, will be waived because of the filing of the limited notice of appearance.

DATED: December 22, 2022

_____
RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| LEANDRE MARTELL,<br><br>　　　　　　　　　　Plaintiff<br><br>　v.<br><br>JULIE WILLIAMS, et al.,<br><br>　　　　　　　　　　Defendants | Case No. 2:22-cv-00858-RFB-BNW<br><br>REPORT OF ATTORNEY GENERAL<br>RE: RESULTS OF 90-DAY STAY |

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL WILL FILE THIS FORM. THE INMATE PLAINTIFF WILL NOT FILE THIS FORM.**

　　　　On _____ [*the date of the issuance of the screening order*], the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed. The Court ordered the Office of the Attorney General of the State of Nevada to file a report ninety (90) days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies.

## REPORT FORM

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

　　____　A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

　　____　A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

　　____　No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

    \_\_\_\_ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

    \_\_\_\_ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

    \_\_\_\_ None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

    \_\_\_\_ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

    \_\_\_\_ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

    \_\_\_\_ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

    \_\_\_\_ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____    _____

                             Print                                        Signature

Address: _____         Phone:

                                                                        _____

                    _____         Email: _____